IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAURA MATTHEWS,<br>      **Plaintiff,** | )<br>) |
| | ) |
| **v.** | ) |
| | ) |
| BROOKSTONE STORES, INC., *et al.,*<br>      **Defendants.** | )<br>) |
| | )   **CIVIL ACTION 05-0369-WS-C** |
| | ) |
| BROOKSTONE STORES, INC.,<br>      **Third-Party Plaintiff,** | )<br>) |
| | ) |
| **v.** | ) |
| | ) |
| D&M  SALES, INC.,<br>      **Third-Party Defendant.** | )<br>) |

**ORDER**

This matter is before the Court on defendant D&M Sales, Inc.'s Motion to Dismiss Plaintiff's Second Amended Class Action Complaint (doc. 100).  The Motion has been briefed and is ripe for disposition.[1]

**I.    Background.**

In her Second Amended Class Action Complaint (doc. 94), plaintiff Laura Matthews brings claims arising from her purchase of a "Pure-Ion" air purifier from a Brookstone retail store in Georgia in December 2004.  Plaintiff maintains that she purchased her air purifier from defendants Brookstone, Inc. ("Brookstone, Inc."), Brookstone Company, Inc. ("Brookstone Company") and Brookstone Stores, Inc. ("Brookstone Stores") (collectively, "Brookstone"), and that the unit was designed, manufactured, distributed and sold by Brookstone and defendant D&M Sales, Inc. ("D&M").  According to plaintiff, this device does not perform the functions

---

[1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

that it was marketed and warranted to perform, inasmuch as it fails to remove dust, pollen and other impurities from the air, and instead exposes consumers to hazardous levels of ozone.  On behalf of herself and purportedly on behalf of all consumers in the United States who have purchased air purifier units from Brookstone within the last six years, Matthews advances claims against all three Brookstone entities and D&M for fraud, negligent/reckless misrepresentation, breach of implied warranty, money had and received, unjust enrichment, conspiracy and permanent injunction, plus separate claims against the Brookstone entities for breach of contract and breach of express warranty.  A hearing on plaintiff's Motion for Class Certification was conducted before Magistrate Judge Cassady on April 27, 2006, and that motion has been taken under submission.

This Court is now called upon to assess D&M's jurisdictional status.  Defendant D&M was not named in the Complaint, but was initially brought into the case by defendant Brookstone Stores as a third-party defendant on September 20, 2005.  (*See* doc. 23.)  Plaintiff followed by submitting a First Amended Complaint (doc. 52) in November 2005, naming D&M as an additional party defendant.  Almost five months later, D&M moved to dismiss plaintiff's claims against it for lack of personal jurisdiction, as well as various claim-specific defects.  On May 24, 2006, the undersigned entered an Order (doc. 175) determining that D&M's personal jurisdiction defense was not waived or abandoned by virtue of the delay in asserting it, and authorizing a deposition of D&M to afford plaintiff a reasonable opportunity to investigate the jurisdictional allegations.  Following that deposition, Matthews and D&M supplemented the record as to the Rule 12(b)(2) issue with some 43 pages of supplemental briefing and 26 additional exhibits.

## II.    Legal Standard for Personal Jurisdiction Defense.

Where a district court in its discretion decides a personal jurisdiction issue without an evidentiary hearing, it is the plaintiff's burden to establish a *prima facie* case of personal jurisdiction over a nonresident defendant.  *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997).  Such a showing requires the presentation of evidence sufficient to withstand a motion for directed verdict.  *Id.*  In considering the adequacy of a plaintiff's proffer, district courts accept as true all facts alleged in the complaint, to the extent they are uncontroverted by a defendant's affidavits.  *Id.*  Where a plaintiff pleads sufficient material facts to show a basis for personal jurisdiction

and where a defendant submits affidavits controverting those allegations, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[,] unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier*, 288 F.3d at 1269.  If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, then all reasonable inferences must be construed in the plaintiff's favor.  *See id.*

"When a defendant challenges personal jurisdiction, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution." *Lasalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F. Supp.2d 1293, 1296 (S.D. Ala. 2003) (citations omitted); *see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005) (similar). In Alabama, this two-pronged inquiry collapses into a single question because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment.  *See Mutual Service Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) ("Alabama's long-arm statute authorizes Alabama courts to assert jurisdiction to the fullest extent constitutionally permissible," such that the sole issue is whether exercise of jurisdiction would violate due process); *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000); *Lasalle Bank*, 274 F. Supp.2d at 1296; *Reliance Nat'l Indemnity Co. v. Pinnacle Cas. Assur. Corp.*, 160 F. Supp.2d 1327, 1332 (M.D. Ala. 2001).  Accordingly, the critical question here is whether the exercise of personal jurisdiction over D&M conforms to constitutional safeguards.

Due process authorizes the exercise of personal jurisdiction when "(1) the nonresident defendant has purposefully established minimum contacts with the forum;" and "(2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Carrillo*, 115 F.3d at 1542 (quoting *Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange*, 19 F.3d 624, 627 (11th Cir. 1994)); *see also Horizon*, 421 F.3d at 1166; *Molina*, 207 F.3d at 1356.

The minimum contacts analysis varies depending on whether the type of jurisdiction asserted is general or specific.  Indeed, facts supporting "[p]ersonal jurisdiction may be general,

which arise from the party's contacts with the forum state that are unrelated to the claim, or specific, which arise from the party's contacts with the forum state that are related to the claim." *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002). Under general jurisdiction, there must be a showing of "continuous and systematic" contacts between the defendant and the forum state even if those contacts are unrelated to the plaintiff's claims. *Id.* By contrast, specific jurisdiction is proper where (i) the defendant's contacts with the forum state are related or give rise to the plaintiff's cause of action, (ii) the contacts involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, and (iii) the defendant's contacts with the forum are such that the defendant should reasonably anticipate being haled into court there. *See, e.g., McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005); *Carrillo*, 115 F.3d at 1542; *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993).

## III.    Analysis of D&M Motion.

Defendant D&M seeks dismissal of this action for lack of personal jurisdiction, in addition to asserting various grounds for dismissal of particular claims for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P.[2] D&M maintains that specific jurisdiction is improper because there are no allegations tending to show a relationship among Matthews, D&M, the Complaint, and the State of Alabama. Furthermore, D&M asserts that general jurisdiction cannot properly be wielded against it because its connections with the

---

[2]     The personal jurisdiction issue must be tackled first because this Court cannot rule on D&M's other arguments if personal jurisdiction is lacking. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (federal court confronting both Rule 12(b)(2) and Rule 12(b)(6) motions should consider personal jurisdiction issue first because court without personal jurisdiction is powerless to take further action). Additionally, the Court notes that D&M's Motion to Dismiss alleges as an alternative ground for relief that venue is improper, pursuant to Rule 12(b)(3), Fed.R.Civ.P., but fails to mention it in its original or supplemental memoranda of law. (*See* docs. 101, 130.) This omission is striking, given D&M's insistence that plaintiff has engaged in forum-shopping by filing suit in this forum, rather than in Georgia where the transaction actually occurred. (D&M Supp. Brief (doc. 197), at 1, 2, 15.) In any event, the venue issue cannot be addressed by this Court because D&M has failed to articulate or identify any grounds for it, in derogation of Local Rule 7.1(a).

-4-

forum state are too isolated and remote to satisfy the "continuous and systematic" threshold.[3]
Based on information secured during jurisdictional discovery, Matthews disagrees.

        ***A.      Relevant Facts.***[4]

      During the course of jurisdictional discovery, plaintiff has uncovered and submitted the
following relevant facts:  D&M was formed in March 2003 as a Massachusetts corporation by
Christopher Lozzio, its president and sole officer.  (Lozzio Dep., at 9; Lozzio Aff., ¶ 2;
Plaintiff's Exh. E.)[5]  The uncontroverted evidence is that D&M never received any purchase

---

        [3]      D&M's Supplemental Brief (doc. 197) includes numerous footnotes in a tiny font
size that runs afoul of the requirements of Local Rule 5.1(a)(2), which prescribes a minimum of
12-point type and creates no exceptions for footnotes.  The formatting requirements should be
heeded in future submissions to this Court.

        [4]      Plaintiff argues that the undersigned should decline to give any weight to the
Affidavit of Christopher Lozzio submitted by D&M as Exhibit 2 to its supplemental brief.
Matthews contends that the Lozzio Affidavit should be rejected under the well-recognized
principle that mere conclusory legal statements in an affidavit "are in substance legal
conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own
supporting jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).  But
this argument mischaracterizes the Lozzio Affidavit.  Far from sounding in cursory legal
conclusions that simply parrot a long-arm statute and declare that it does not apply, the Lozzio
Affidavit proffers specific facts about the geographic scope of D&M's corporate activities.
*Compare Posner*, 178 F.3d at 1215 (affidavit that "contends, by reciting the long-arm statute
essentially verbatim, that the jurisdictional statute does not apply" offers conclusory assertions of
ultimate facts and will not be considered).  Plaintiff overlooks the fact that the *Posner* court <u>did</u>
consider those portions of the affidavit "that set forth specific factual declarations within the
affiant's personal knowledge." *Id.*  That is precisely what the Lozzio Affidavit does.  As such,
the undersigned finds that the Lozzio Affidavit is distinguishable from that at issue in *Posner*, as
it is not limited to the conclusory denials that motivated the *Posner* ruling.  The Court also
cannot agree with plaintiff's critique that the affidavit "coyly attempts to blur the distinction"
between Lozzio and D&M.  (Plaintiff's Supp. Brief, at 13.)  The distinction between the two is
actually quite clear.  The Lozzio Affidavit may be of limited utility, because of its emphasis on
Lozzio's personal circumstances, rather than those of D&M, but it certainly is not devoid of
utility.  Notwithstanding plaintiff's objection, the Court will give this affidavit such weight as is
appropriate.

        [5]      Lozzio has a somewhat tempestuous history in this litigation.  Although not
originally named as a defendant, he became enmeshed in this action as a third-party defendant
when Brookstone Stores filed a Third-Party Complaint (doc. 23) alleging indemnity and breach
of warranty.  Plaintiff followed by filing a First Amended Class Action Complaint (doc. 52)
naming Lozzio as an additional party defendant with respect to her claims, as well.  In December

orders or conducted any business within the State of Alabama.  (Lozzio Dep., at 91-92, 153.)
D&M has never owned any property in Alabama and has never contracted to supply any goods
or services in Alabama.  (*Id.* at 153.)

According to its articles of incorporation, D&M's purpose was to act as a sales
representative for companies in the United States and abroad.  (*Id.* at 10-11.)  In that regard,
D&M representatives traveled across the country to meet with various national big-box retailers
(in states other than Alabama) in marketing LumiPure ionizing air purifiers produced by a
Chinese company called VisionTac.  (*Id.* at 101-03.)[6]  D&M's arrangement with VisionTac was
that D&M would sell products designed, manufactured and shipped by VisionTac in China to
retailers in the United States.  (*Id.* at 35, 54, 56.)  D&M succeeded in selling VisionTac-
manufactured air purifiers to Sam's Club ("Sam's"); Bed, Bath & Beyond ("BB&B"); and
Brookstone.  (*Id.* at 35, 57, 114.)  D&M never sold air purifiers to any other entity or person.
(*Id.* at 72.)  D&M never sold or marketed any products directly to consumers or end users,
instead serving exclusively as a middleman between the manufacturer (VisionTac) and the
retailer.  (*Id.* at 56, 59, 94.)  D&M did not maintain an inventory of these products for any
substantial length of time.  (*Id.* at 58-59, 152.)  D&M outsourced a toll-free customer service
telephone number to vendors in New England, so that consumers who purchased LumiPure air
purifiers (but not the Brookstone variety) could obtain customer service and product support.
(*Id.* at 19.)  D&M prepared the packaging and instruction manuals, and shipped the LumiPure air

---

2005, however, Brookstone Stores took a voluntary dismissal of its third-party claims against
Lozzio after the latter filed a Rule 12(b) motion challenging personal jurisdiction.  (*See* doc. 57.)
Undeterred, Matthews continued to press her claims against Lozzio until, after a period of
jurisdictional discovery, she consented to dismissal without prejudice of all claims against him,
apparently because she conceded that his jurisdictional objections had merit.  (*See* doc. 79.)
Thus, Lozzio is no longer a party to this dispute.

[6]      D&M applied for the trademark for the "LumiPure" name.  (*Id.* at 55.)  D&M also
created a passive website (www.lumipure.com) to provide product information or "sell sheets"
for LumiPure air purifiers; however, it was not possible for consumers to order the product from
that website, and D&M did not sell the product directly to end users.  (*Id.* at 59-60, 95.)

purifiers to Sam's and BB&B.  (*Id.* at 57-58, 60, 94.)[7]  D&M also sold humidifiers to both Sam's and BB&B.  (*Id.* at 73, 75.)  A reasonable inference is that Sam's and BB&B have sold products purchased from D&M to consumers in the State of Alabama.[8]

As for D&M's dealings with Brookstone, the parties' manner and course of dealing was as follows: (a) Brookstone would place an order with D&M for the VisionTac-designed air purifiers; (b) D&M would relay the order to VisionTac in China; (c) VisionTac would manufacture the product in China, and Brookstone would inspect and take possession of it at the factory in China;[9] and (d) Brookstone would send payment for the air purifiers to D&M, who in turn would settle up with VisionTac.  (*Id.* at 36, 42-43, 91.)[10]  At no time did D&M ever transfer possession of air purifiers to Brookstone at a location in Alabama.  (Lozzio Aff., ¶ 8.)  Upon receipt of the products, Brookstone sold them through their distribution channels as they saw fit,

---

[7]    D&M would ship products to Sam's at one of their 19 distribution centers, none of which were located in Alabama.  (*Id.* at 83.)  Sam's would actually take possession of the goods at D&M's warehouse in Illinois.  (*Id.* at 84; Plaintiff's Exh. R.)  Lozzio estimated that D&M sold as many as 140,000 units to Sam's during their dealings.  (Lozzio Dep., at 72.)  Meanwhile, with respect to BB&B, D&M would ship ordered units directly to individual stores; however, there is no evidence that any of the small test run of products ordered by BB&B from D&M were shipped to Alabama retail locations.  (*Id.* at 101.)

[8]    With respect to BB&B, such an inference may not be appropriate as to LumiPure air purifiers, given that D&M's relationship with that entity consisted of simply a test batch of less than 100 air purifiers.  (*Id.* at 69-70.)  However, Lozzio testified that D&M sold approximately 1,500 humidifiers to BB&B, making it reasonable to infer that at least some of those items ultimately reached Alabama consumers.  (*Id.* at 76.)

[9]    There is some evidence that another Chinese company (Hong Hwa Electric Appliance Co. Ltd.) actually manufactured the air purifiers, although VisionTac designed them and was responsible for their manufacture.  (D&M Exh. 6, at #1, 5; Burout Dep., at 36.)  This discrepancy is not material to the issues presented in the instant Motion to Dismiss.

[10]    Although D&M was in the business of marketing LumiPure air purifiers, those sold to Brookstone were not packaged and sold as LumiPure products, but were instead labeled as Brookstone "Pure-Ion" products.  (*Id.* at 53, 57.)  The first version of the "Pure-Ion" air purifier sold by Brookstone was substantially similar to the LumiPure.  (*Id.* at 53, 97.)  Eventually, though, Brookstone designed a version two of this air purifier, modifying the outside shell to change the appearance and altering the functionality of the control panel, but retaining the internal components from the original VisionTac design.  (*Id.* at 48-49.)

including catalog, Internet and retail stores.  (Lozzio Dep., at 51-52.)  A reasonable inference is that Brookstone Stores sold some quantity of these air purifiers in Alabama.  Written agreements between D&M and Brookstone characterized the former's role as "designer, manufacturer and distributor" of the products.  (*Id.* at 34-35; Plaintiff's Exh. L, at 1; Plaintiff's Exh. P.)  Lozzio's testimony unequivocally refutes that description of what D&M did, and jurisdictional discovery apparently did not disclose any other evidence (at least, none set forth in plaintiff's 18 supplemental exhibits) that D&M's function was anything other than acting as an intermediary between VisionTac and Brookstone.  Although the evidence is taken in the light most favorable to Matthews at this stage of the proceedings, this discrepancy is not material to the legal issues presented in D&M's Rule 12(b) motion.

Other than humidifiers and air purifiers, D&M did not sell any products.  (Lozzio Dep., at 100.)  D&M no longer sells LumiPure air purifiers, and no longer has any business relationship with Brookstone.  (*Id.* at 72; D&M Exh. 6, at #2.)

**B.** **Plaintiff's Jurisdictional Arguments.**

Matthews contends that the exercise of personal jurisdiction over D&M is constitutionally permissible under both general and specific jurisdiction theories.  Each will be considered in turn.

**1.** **General Jurisdiction.**

Although Matthews points to no evidence that D&M representatives ever set foot in Alabama, attempted to make business contacts in Alabama, or transacted any business directly with anyone in Alabama, she nonetheless maintains that D&M is subject to general jurisdiction because of its sale of LumiPure air purifiers and humidifiers.  In particular, she contends that D&M "formed an undeniable link in placing the product ... into the stream of commerce by selling them to Brookstone, Sam's Club and Bed, Bath & Beyond."  (Plaintiff's Supp. Brief, at 17.)  "The stream of commerce test for jurisdiction is met if the nonresident's product is purchased by or delivered to a consumer in the forum state, so long as the nonresident's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there for claims arising out of that conduct."  *Molina*, 207 F.3d at 1357.  Here, Matthews misapplies the stream-of-commerce theory by attempting to utilize it as a springboard for general jurisdiction.  Stream-of-commerce theory is a basis for asserting specific jurisdiction,

not general jurisdiction.[11]  In other words, if Matthews were suing D&M in Alabama because of
an air purifier that she had purchased in Alabama and that D&M had placed in the stream of
commerce, then this stream-of-commerce nexus might well support exercise of specific
jurisdiction over D&M in this forum.  But Matthews purchased her air purifier in Georgia, not
Alabama, so a stream-of-commerce theory would, at most, support the exercise of specific
jurisdiction over D&M in Georgia.  Thus, stream-of-commerce theory cannot establish the
requisite jurisdiction over D&M in this forum.

     Undeterred by the problems with her stream-of-commerce argument, plaintiff next seeks
to impose general jurisdiction over D&M in Alabama based on the following facts: (a) D&M
operated a passive website to provide information for the LumiPure products it sold to Sam's and
BB&B; (b) D&M contracted with a third party to operate a toll-free customer service line for
Sam's and BB&B customers who purchased LumiPure products; and (c) D&M trained the
representatives of that customer-service vendor.  (Plaintiff's Supp. Brief, at 17.)  None of these
facts support jurisdiction.  A purely passive informational website such as that operated by D&M
lacks jurisdictional significance.  *See GTE New Media Services, Inc. v. BellSouth Corp.*, 199
F.3d 1343, 1349-50 (D.C. Cir. 2000) (cautioning that "personal jurisdiction surely cannot be
based solely on the ability of District residents to access the defendants' websites, for this does
not by itself show any persistent course of conduct by the defendants in the District," and
comparing access to a website to being "nothing more than a telephone call by a District resident
to the defendants' computer servers"); *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th
Cir. 1999) (in "situations where a defendant merely establishes a passive website that does
nothing more than advertise on the Internet ... personal jurisdiction is not appropriate");

---

[11]    *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 (7th
Cir. 2003) (stream-of-commerce theory "is relevant only to the exercise of specific jurisdiction;
it provides no basis for exercising general jurisdiction over a nonresident defendant"); *Alpine
View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000) ("We have specifically rejected a
party's reliance on the stream of commerce theory to support asserting general jurisdiction over a
nonresident defendant."); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610,
612 (8th Cir. 1994) (characterizing stream-of-commerce theory as a type of specific jurisdiction);
*Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F.
Supp.2d 665, 673 (E.D. Pa. 2005) (similar).

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-20 (9th Cir. 1997) (decrying efforts to predicate personal jurisdiction on operation of an essentially passive web page advertisement).[12] Nor does plaintiff provide any law to counter the authority holding that maintaining a nationwide toll-free telephone number, in connection with a passive Internet site, does not create general jurisdiction.  *See Mink*, 190 F.3d at 337 (expressly finding that operation of passive website and toll-free telephone number is insufficient to establish personal jurisdiction); *Jeffers v. Wal-Mart Stores, Inc.*, 152 F. Supp.2d 913, 923 (S.D. W.Va. 2001) (where defendant operated a passive website, "use of a nationwide toll-free number and the occasional advertising in national trade journals do not add enough to Defendant's conduct to raise it above the constitutional bar"); *O'Connor v. Sandy Lane Hotel Co.*, 2005 WL 994617, *4 (E.D. Pa. April 28, 2005) ("there can be no dispute that the maintenance of a toll-free number is not a forum contact significant or continuous enough to ground general jurisdiction").  And plaintiff's suggestion that D&M's alleged training of third-party representatives in Maine and Massachusetts to staff the toll-free customer service line somehow creates general jurisdiction over D&M in Alabama fails because the cited deposition page makes no reference to any such training and, even if it did, the Court perceives no link between such conduct and a general jurisdiction analysis.

In summary, then, Matthews would predicate general jurisdiction over D&M on the facts that it had sales arrangements with several nationwide retailers, that some of the products it sold

---

[12]      To hold otherwise would be to declare that operation of a website and a 1-800 number automatically subjects a company to general personal jurisdiction in every state of the Union.  In the undersigned's opinion, such a ruling would expand the notion of jurisdiction well beyond applicable constitutional parameters.  *See, e.g., GTE New Media*, 199 F.3d at 1350 (theory that mere accessibility of websites in forum state constitutes minimum contacts "cannot hold water" because "under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology ... should vitiate long-held and inviolate principles of federal court jurisdiction."); *Cybersell*, 130 F.3d at 420 (commenting that such a ruling would create a result in which every complaint arising from trademark infringement on Internet would give rise to personal jurisdiction wherever plaintiff's principal place of business was located, in contravention of traditional notions of what constitutes purposeful activity invoking benefits and protections of forum state); *Snyder v. Dolphin Encounters Ltd.*, 235 F. Supp.2d 433, 441 (E.D. Pa. 2002) ("If the contacts at issue here establish general personal jurisdiction, then any corporation with websites ... would be subject to general jurisdiction in every state.").

to such nationwide retailers were ultimately resold to Alabama consumers, that D&M had a passive informational website and a toll-free customer service line, and that D&M reasonably must have understood that some of the air purifiers and humidifiers it was selling would be resold to end users in Alabama.  But these connections are too attenuated to satisfy the rigorous "continuous and systematic" threshold for general jurisdiction.  And the stream-of-commerce notion that represents Matthews' best hope for personal jurisdiction fails because case law confines that theory to specific jurisdiction and none of the units placed in the stream of commerce by D&M are alleged in the Complaint to have harmed Matthews in Alabama.

    2. *Specific Jurisdiction.*

   Plaintiff also makes two arguments in favor of invoking specific jurisdiction over D&M. First, Matthews asserts that personal jurisdiction is proper because D&M is charged in this case with "causing injury or damage in this state to any person by breach of warranty expressly or impliedly made in the sale of goods in this state."  (Plaintiff's Supp. Brief, at 13.)  This assertion is not correct.  The Second Amended Complaint charges D&M with causing injury to Matthews (a Georgia citizen and resident) in the State of Georgia by breaching warranties in connection with the sale of goods in Georgia.  Nothing in the Second Amended Complaint alleges that D&M wronged Matthews in any way in Alabama, so this theory of specific jurisdiction cannot provide the requisite analytical hook for haling D&M into court in this forum.

   Second, Matthews argues that the requisite specific jurisdiction is created by Count VIII of the Complaint, which alleges a state law conspiracy cause of action against all defendants.[13] Under the so-called "conspiracy theory of jurisdiction," personal jurisdiction can be exercised over a defendant who lacks minimum contacts to the forum state in the traditional sense if a substantial connection exists between that forum and a conspiracy entered into by that defendant. *See, e.g., Remmes v. International Flavors & Fragrances, Inc.*, 435 F. Supp.2d 936, 941 (N.D. Iowa 2006) (collecting cases in which courts have recognized civil conspiracy as a basis to

---

[13] Count VIII characterizes the conspiracy as follows: "Defendants jointly endeavored to design, manufacture, distribute, market, advertise and sell to Plaintiff and the Class Members 'air purifiers' that failed to remove and could not remove impurities from the air as marketed and advertised, and charged Plaintiff and the Class Members hundreds of dollars based on said representations."  (Second Amended Complaint, ¶ 85.)

support *in personam* jurisdiction).

Alabama courts have recognized and adopted the conspiracy theory of personal jurisdiction. *See Ex parte United Ins. Companies, Inc.*, --- So.2d ----, 2006 WL 307830 (Ala. Feb. 10, 2006); *Ex parte McInnis*, 820 So.2d 795, 806-07 (Ala. 2001).[14]  However, it is well established in Alabama that a plaintiff cannot establish personal jurisdiction under a conspiracy theory unless the plaintiff "plead[s] with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *McInnis*, 820 So.2d at 806-07 (citation omitted).[15]  This "overt act" requirement creates an insuperable difficulty for Matthews.  After all, it is undisputed that she is a Georgia citizen who purchased her air purifier from a Brookstone retail store in Georgia, and later exchanged that air purifier for another unit at a Brookstone retail store in Georgia.  (Matthews Dep., at 9-10.)[16]  Plaintiff does not allege that her

---

[14]     "Whether personal jurisdiction can be obtained under a state long-arm statute on a conspiracy rationale at all is a question of state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 102 n.8 (3rd Cir. 2004); *see also Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992) (same); *Posner*, 178 F.3d at 1217-18 (examining Florida law to determine whether plaintiff could predicate personal jurisdiction on conspiracy claim).

[15]     The "overt act" requirement is not unique to Alabama, but is ubiquitous in the case law.  Indeed, numerous courts have required pleading of an overt act in the forum state as a prerequisite to establishing personal jurisdiction on a conspiracy basis.  *See, e.g., Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (recognizing that the conspiracy theory of personal jurisdiction requires plaintiff to plead with particularity "the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy"); *Textor v. Board of Regents of Northern Illinois University*, 711 F.2d 1387, 1392-93 (7th Cir. 1983) ("To plead successfully facts supporting application of the conspiracy theory of jurisdiction a plaintiff must allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum state."); *In re Terrorist Attacks on September 11, 2001*, --- F. Supp.2d ----, 2006 WL 2008624 (S.D.N.Y. June 28, 2006) ("To establish personal jurisdiction on a conspiracy theory, [p]laintiffs must make a prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York.") (citation omitted); *Remmes*, 435 F. Supp.2d at 942 ("In order to plead successfully facts supporting application of the conspiracy theory of jurisdiction, a plaintiff must allege ... an overt act taken in furtherance of the conspiracy within the forum's boundaries.").

[16]     For reasons that are unclear, the Second Amended Complaint does not identify the state in which plaintiff purchased or exchanged her Brookstone air purifiers, nor does it offer any allegations to justify plaintiff's selection of an Alabama venue for this litigation, rather than

conspiracy claims against defendants rest on any overt acts in the State of Alabama. Plaintiff's conspiracy claim does not hinge on anything that any defendant did or may have done in Alabama. To be sure, other putative class members' conspiracy claims might involve overt acts in Alabama (*e.g.,* if they purchased the allegedly offending product in Alabama or if a conspirator delivered that product to Alabama). But Matthews cannot satisfy jurisdictional prerequisites for her claims based on the jurisdictional status of others, even if they are putative class members, because (1) the Second Amended Complaint makes no such allegation, and (2) even if it did, defendants' activities towards others have no bearing on the wrong of which plaintiff complains.[17]

In response to D&M's argument that the "overt act" requirement is not satisfied here, plaintiff does not identify an overt act that might enable conspiracy-based jurisdiction to attach. Instead, Matthews argues that she need not satisfy the overt act requirement as to D&M because defendant Brookstone Stores has not contested personal jurisdiction, such that conspiracy jurisdiction may be exercised over all co-conspirators because of Brookstone Stores' overt acts. (Plaintiff's Supp. Brief, at 22 n.8.) This bewildering contention fails on several levels. Plaintiff misapprehends the nature of D&M's overt act objection. The point is not that plaintiff has failed to allege that D&M engaged in an overt act in Alabama, but is instead that plaintiff has failed to show that <u>any</u> alleged conspirator committed such an overt act in Alabama that harmed her. The

_____

a Georgia venue. By all appearances, plaintiff does not contend that she has incurred damage by anything that defendants did or failed to do in Alabama; rather, her alleged injuries arise from an isolated retail transaction in Georgia, and plaintiff's injuries were allegedly caused by defendants, none of whom are based in Alabama. Under the circumstances, the Court is hard-pressed to understand why no defendant sought dismissal under Rule 12(b)(3), Fed.R.Civ.P., given the lack of any apparent nexus between the forum state and this dispute.

[17]    The law is clear that a plaintiff cannot rely on acts allegedly perpetrated against other putative class members to establish personal jurisdiction over defendants for her claims. *See Jung v. Association of American Medical Colleges*, 300 F. Supp.2d 119, 136 n.8 (D.D.C. 2004) ("plaintiffs cannot rely on alleged injury to putative plaintiffs in order to meet the in-District injury requirement"); *Williams v. FirstPlus Home Loan Trust 1996-2*, 209 F.R.D. 404, 413 (W.D. Tenn. 2002) (personal jurisdiction is determined by reference to named plaintiff, not putative class members); *Barry v. Mortgage Servicing Acquisition Corp.*, 909 F. Supp. 65, 74-75 (D.R.I. 1995) (claims of named class representative are all that may be considered for personal jurisdiction analysis, not those of other putative class members).

wrong of which Matthews complains did not rest to any extent on any acts committed by any conspirators in Alabama.  Furthermore, Matthews improperly conflates Brookstone Stores' failure to file a Rule 12(b)(2) motion into evidence that Brookstone Stores committed an overt act in furtherance of the conspiracy in Alabama.  Brookstone Stores could not possibly have prevailed on a Rule 12(b)(2) motion, not because there is evidence that it committed overt acts as to Matthews in Alabama (there is none) but because it operates three retail stores in Alabama, which is exactly the kind of continuous and systematic contact that establishes general jurisdiction.  Thus, plaintiff's contention that the propriety of general jurisdiction over Brookstone Stores somehow dispenses with the need for any "overt act" in Alabama by any alleged conspirator is misguided.

Simply put, then, conspiracy jurisdiction requires an overt act in the forum state.  For purposes of Matthews' claims, no overt acts are alleged to have been committed in furtherance of the conspiracy in Alabama.  Because the Second Amended Complaint fails to plead with particularity any overt acts within Alabama taken in furtherance of defendants' alleged conspiracy to mislead plaintiff (a Georgia citizen) into purchasing an allegedly worthless air purifier from Brookstone in Georgia, plaintiff cannot secure specific personal jurisdiction against D&M on a conspiracy theory.

For all of these reasons, the exercise of specific jurisdiction over D&M is improper and unwarranted in this action.

## IV.   Conclusion.

For all of the foregoing reasons, the Motion to Dismiss (doc. 100) filed by defendant D&M Sales, Inc. is **granted** for lack of personal jurisdiction.[18]  Plaintiff's claims against D&M are **dismissed without prejudice** for lack of minimum contacts with Alabama.  *See Posner*, 178

---

[18]      In light of this ruling, the Court cannot and will not reach D&M's other bases for seeking dismissal, including its Rule 12(b)(6) arguments that the Second Amended Complaint fails to state a cause of action against D&M for fraud or misrepresentation, that lack of privity between D&M and Matthews bars her breach of warranty claims, that plaintiff's unjust enrichment and money had and received claims are legally deficient because D&M never received money from her, that Matthews' conspiracy allegations are inadequate, and that her injunction claim should be dismissed because D&M no longer markets the air purifier at issue. (*See* doc. 101, at pp. 2-6.)

F.3d at 1221 (instructing that dismissal for lack of personal jurisdiction must be without prejudice, so as not to preclude other litigation on the merits in other jurisdictions).

The Court's finding that Alabama courts lack personal jurisdiction over D&M would appear fatal to Brookstone Stores' third-party claims against D&M.  Brookstone Stores was silent in the briefing on D&M's Motion to Dismiss, which was nominally directed solely at plaintiff's claims.  To tie this loose end expeditiously, Brookstone Stores is hereby **ordered**, on or before **December 20, 2006**, to **show cause**, if any exists, why its third-party claims against D&M ought not be dismissed for lack of personal jurisdiction under the reasoning set forth above.

DONE and ORDERED this 8th day of December, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE